## RUSSELL *against* SOUTH BRITAIN SOCIETY.

In *February*, 1807, certain members of the ecclesiastical society of *S.*, being desirous of raising, by subscription, a permanent fund for the support of the gospel ministry in that society, subscribed their names to a writing containing the terms of subscription, by which, among other things, it was stipulated, that the principal of the fund should forever be kept on interest, with good and sufficient security, by the society, at its own charge and risk ; that the society should be forever accountable to the subscribers for the prudent management of the fund, and for the punctual collection of the annual interest arising thereon, and the proper application thereof; and that in case any part of the fund should be lost, wasted or diminished, in any manner whatever, and the society should not replace and make good such deficiency, within one year after it should happen ; or in case of the misapplication of any of the interest ; the society should forfeit the whole of the original fund, and a further sum equal to the interest misapplied ; and each subscriber should be entitled to sue for and recover his share, according to the sum by him originally subscribed. The amount contemplated having been subscribed, the society, in *November*, 1807, accepted the subscription and the terms upon which it was made. The greater part of the fund was afterwards invested, by the society, in the stock of the *Eagle Bank*, and, in consequence of the failure of that institution, in *September*, 1825, without any fault on the part of the society, was totally lost ; and the deficiency thereby produced, was never replaced or made good. In an action of *assumpsit*, brought in *June*, 1832, by one of the subscribers against the society, to recover his share of the forfeiture, it was held, 1. that upon a sound construction of the articles of subscription, the defendants were not only responsible for the prudent management of the fund, but were insurers against a loss in any event, and consequently, the plaintiff was entitled to redress ; 2. that the measure of redress was a proportional part of the amount originally subscribed, and not of the fund as it was after the loss, and consequently, it was not necessary to go into chancery to have an account taken, but the remedy at law was both adequate and appropriate ; and 3. that the forbearance of suit by the plaintiff, for nearly six years after his right of action accrued, was not a waiver of the breach and consequent forfeiture.

In an action on a contract, the contract given in evidence must agree, in substance and in terms, with that stated in the declaration ; and the entire consideration must be clearly and correctly stated.

Therefore, where the plaintiff in an action against an ecclesiastical society, on a contract regarding a fund for the benefit of such society, stated a promise, on his part, to pay to the treasurer of the society, the sum of 100 dollars, in thirty days after notice of the society's accepting said fund ; and

the proof was of promise in the alternative, *viz.* either to pay that sum in thirty days, or to give a note payable in three years, with annual interest, it was held, that there was a fatal variance.

So where the plaintiff in such action stated the consideration of the defend_ant's undertaking to be the delivering up of the fund and subscription paper into the hands and controul of the society; and it appeared from the proof, that this constituted a part only of the consideration; it was held, that the variance was fatal.

So where the plaintiff in such action, set forth in the declaration, the names of the subscribers to the fund, and averred, that they were all original subscribers; and it appeared from the proof, that five of them were not original subscribers, but became subscribers at a subsequent period; it was held, that the variance was fatal.

Where the plaintiff states in his declaration the undertaking of the defend_ant, and then sets forth the contract relied on, if the contract does not sustain the averments, the variance is still fatal; as the setting forth of the contract, in such case, does not relieve the difficulty.

It is a well settled rule, that where there is a special contract, which is still open and in force, the action must be special; and that no recovery can be had on the common counts.

THIS was an action of *assumpsit*, commenced in *June*, 1832. There were three counts in the declaration; the first being for money had and received, and the others special.

In the second count, the plaintiff averred, That on the 28th of *February*, 1807, the plaintiff, with several other persons, associated, for the purpose of raising, by subscription, a fund to support the preaching of the gospel; that the plaintiff, together with several other persons, subscribed the sum of 10,000 dollars, by setting their names to a subscription paper for that purpose, and annexing opposite their respective names, the sum they would each pay, thereby promising to pay to the treasurer of said society, the sum so by them respectively subscribed; to which said subscription paper the plaintiff subscribed the sum of 100 dollars, thereby binding himself to pay to the treasurer of said society, the said sum of 100 dollars, in thirty days after notice of the society's accepting said fund, provided the sum of 5000 dollars was subscribed to said fund, on the 1st day of *January*, 1809; that said sum of 5000 dollars, was subscribed before that time, *viz.* on the 1st day of *December*, 1808, and the plaintiff afterwards paid into the treasury of said society, the sum of 100 dollars, so by him subscribed; that the defendants, in consideration that the plaintiff and the other subscribers to said fund, would deliver up to said society said subscription paper and said fund into

*New-Haven,*
*June, 1833.*

Russell
*v.*
South-Britain.

their hands and controul, undertook and faithfully promised the plaintiff, that they would manage and take charge of the same, and would become responsible for the same, and would safely receive and keep the whole of said sum so subscribed to said fund, and would be responsible for the loss of either the principal or the interest of the same; that the defendants further agreed and promised, that if any part of said fund should be lost, wasted or diminished, in any manner, they would, within one year after the happening of such loss, waste or deficiency, replace and make good the same, or in default thereof, would pay to the original subscribers to said fund, each, the sum by him subscribed to said fund, and that said society would faithfully apply the interest arising on said fund for the support of the preaching of the gospel as aforesaid.

The plaintiff then alleged breaches, general and special, the the latter being thus stated : That on the 1st day of *September*, 1826, the defendants lost from the sum originally subscribed to said fund, the sum of 4000 dollars, by the failure of the *Eagle Bank*, of *New-Haven*, and the further sum of 200 dollars, by the death of *Johnson Wheeler*, and the failure of the society to collect of him the said sum, being the amount by said *Wheeler* subscribed to said fund ; whereby said fund was diminished the sum of 4200 dollars ; and said society did not, within one year after the happening of said losses, nor have they, at any time, made good or replaced said amount so lost or diminished as aforesaid, but have wholly neglected and refused so to do ; nor have they paid back to the plaintiff said sum of 100 dollars, so by him subscribed as aforesaid, nor any part thereof.

The third count, after stating the subscriptions, the object, and the contract on the part of the plaintiff, by virtue of his subscription, substantially as in the second count, specified the names of all the subscribers, with the sums by them respectively subscribed, and then set forth the articles of subscription at length.  Among those alleged to be original subscribers to the fund, were *Truman Pearce*, for 100 dollars, *Bethuel Ward*, for 20 dollars, *Obadiah Hawley*, for 22 dollars, and *Burton Canfield*, for 75 dollars.   The plaintiff then averred, that on the 9th of *November*, 1807, there was subscribed to said fund the sum of 5578 dollars, 34 cents, which was then delivered into the hands of the society's committee for said

society; that within sixty days after said fund amounted to 5000 dollars, and had been so delivered into the hands of the society's committee, said society, in consideration of the raising of said fund, and of the same being delivered into their care and management, did accept said fund, under the conditions, restrictions and regulations named in said articles of of subscription, and did agree and promise, on their part, to fulfil all the stipulations and agreements in said articles contained and stipulated to be by them done and performed, and did, in legal society's meeting, warned for that purpose, and held in said society, on the 9th of *November*, 1807, by a vote of said society, agree to accept said fund or subscription, with all the conditions and restrictions therein contained, and then and there ordered the same to be forthwith recorded, together with the names of the subscribers, and the sums annexed; and the same was then and there recorded in the records of said society.

In the same count, it was also averred, that said society did then and there, by a vote of said society, further agree and promise, that they would accept such further subscriptions or donations, as, added to the aforesaid sum, should amount to the sum of 8000 dollars, and that the same should be recorded and considered as part and parcel of said fund, subject to the same conditions and regulations, in every respect; that the said fund or subscription was, by the plaintiff and the rest of the subscribers thereto, given up into the hands of said society, subject to the said conditions, and was so accepted and received by said society; that said society, then and there entered upon, and took into their possession said fund, and appropriated the same and the interest thereof, to the use and benefit of said society, for the term of twenty years; and that on the 1st of *January*, 1810, other persons subscribed to said fund various sums, whereby the sum of 8000 dollars in the whole, was raised, by said subscription, being a part of said fund, and subscribed under the restrictions and conditions aforesaid.

The plaintiff then averred, that he made and delivered to the treasurer of said society, his note of hand for the sum of 100 dollars, so by him subscribed, payable to said treasurer, in three years, with interest payable annually; that the plaintiff paid the interest on such note annually, until the 1st of *Janua-*

ry, 1820, when he paid to the treasurer of said society, the full amount of his said subscription, and the same went into the treasury of said society, as part and parcel of said fund, and of the original sum subscribed as aforesaid.

The plaintiff further averred, that *Johnson Wheeler*, on the 28th of *February*, 1807, became an original subscriber to said fund, for the sum of 200 dollars, whereby the same became a part of said original fund ; and afterwards, on the 9th of *November*, 1807, he made and delivered to said treasurer, his note of hand, payable to said treasurer, for said sum of 200 dollars. The investment of 4000 dollars, part of the fund so subscribed and paid into the treasury of the society, in the stock of the *Eagle Bank*, and the subsequent failure of the *Eagle Bank*, while such stock was held by the society, whereby said sum of 4000 dollars was wholly lost to said society, were then set forth. The plaintiff then proceeded to allege a loss of the 200 dollars subscribed by *Johnson Wheeler*, in consequence of his death, and the neglect of the society to exhibit their claim against his estate, stating, minutely, the circumstances attending the loss. By these losses, it was finally averred, said fund was diminished, to the amount thereof, which the society had never replaced or made up.

The defendants pleaded, 1st, *non assumpsit ;* 2ndly, *non assumpsit infra sex annos ;* 3rdly, that the promises and agreements in the second and third counts alleged, were not made in writing, nor signed by any agent of the defendants, thereunto lawfully authorized. On each of these pleas, issue was joined and closed to the court.

On the trial of the cause, at *New-Haven, January* term, 1833, before *Peters*, J. the following facts were admitted and found. The subscription paper mentioned in the declaration, was dated the 28th of *February*, 1807 ; the material parts of which are the following :

" Whereas the preaching of the gospel is of divine institution, necessary and conducive to the propagation of *Christian* knowledge, to the support of civil government, and to the union, peace and happiness of towns and societies ; and the usual modes of supporting ministers, by taxing the inhabitants of societies, is found inconvenient : We, the subscribers, are desirous of raising, by subscription, a permanent fund of 6000 dollars, for the purpose of supporting the gospel ministry, in

the society of *South-Britain*, in the town of *Southbury*, in
*Connecticut*, in the manner and under the regulations, re-
strictions and conditions herein-after mentioned, *viz.*

" I.   The principal of said fund to be forever kept on inter-
est, with good and sufficient security, by said society, at their
charge and risk.

" II.   The annual interest arising on said fund, to be yearly
and punctually collected, and applied to the support of a min-
ister of the *Presbyterian* or *Congregational* order, regularly
ordained and settled in said society, according to the present
religious establishment of ecclesiastical *Presbyterian* societies
in this state ; or in case the said society shall, at any time, be
deprived of a settled minister of the above description, to the
support of a candidate of said order, regularly licensed, and
employed by the society, for the time being.

" III.   Any surplusage of interest after the full support of
the ministry, may be added to the principal of said fund, or
be applied to the building or repairing of their meeting-house,
and for no other purpose.

" IV.   The said society to be forever accountable to the
subscribers, their heirs, executors, administrators or assigns,
for the prudent management of said fund, and for the punctu-
al collection of the annual interest arising thereon, and the
proper application thereof ; and in case any part of said fund
shall be lost, wasted or diminished, in any manner whatever,
and said society shall not replace and make good said deficien-
cy, within one year after said deficiency shall happen ; or in
case any of the interest arising on said fund, shall be applied
or used for any other purpose, than is herein-before directed ;
then said society shall forfeit the whole of said fund, originally
subscribed, and such further sum as shall be equal to the in-
terest misapplied as aforesaid ; and each and every subscri-
ber, his or her heirs, executors, administrators and assigns,
shall have good right to sue for and recover his, her or their
share, according to the sum originally subscribed."

The fifth article required the subscriptions to be recorded,
and an annual statement to be made of the fund, and of the
interest accrued thereon, the amount collected, and the dispo-
sition thereof.   This statement was to be recorded ; and
copies of it were to be furnished to subscribers, when requir-
ed by them.

The further conditions following, were then annexed, *viz.*

" 1st. Nothing herein contained shall be binding on any subscriber, unless the sum of 5000 dollars shall be subscribed, on or before the first day of *January* 1809.

" 2ndly. Nor unless the said society, within sixty days after this subscription shall amount to the said sum of 5000 dollars, and shall be delivered into the hands of the society's committee, shall, in legal society's meeting, warned for that purpose, agree, by their vote, to accept the same, and cause it to be recorded in manner and form as is expressed in the fifth article.

" 3rdly. Each subscriber shall, within thirty days after notice being given, pay unto the treasurer of this society the full amount of his subscription, or else execute and deliver unto the treasurer a note of hand, payable to said treasurer, or his successor in office, within three years ; and the interest on the note, at six *per cent. per annum*, to be paid annually."

The plaintiff signed this instrument, and subscribed thereunto the sum of 100 dollars ; and the sum of 5578 dollars, 34 cents, was duly subscribed thereunto, before the 9th of *November* 1807. At a society's meeting, duly warned, and held on the day last mentioned, which was within sixty days after the subscription amounted to the sum of 5000 dollars, and had been delivered into the hands of the committee, the following votes were passed : " *Voted*, that this society will accept of said subscription, with all the conditions, restrictions, limitations and accountabilities therein expressed ; and that the same be recorded forthwith in the records of this society, with the subscribers names and sums annexed." " *Voted*, that this society will accept such further subscriptions or donations as added to the aforesaid sum, shall, in the whole, amount to the sum of 8000 dollars ; and that the same shall be and remain part and parcel of said fund, subject to the same conditions and regulations, in every respect ; and the same shall be recorded as above."

After this meeting, the following names, with the sums thereto respectively annexed, were added to the subscription, *viz. Truman Pearce*, 100 dollars ; *Bethuel Ward*, 20 dollars ; *Wait Downs*, 50 dollars ; *Obadiah Hawley*, 22 dollars ; *Burton Canfield*, 75 dollars, by *John Fenn's* note.

New-Haven,
June, 1833.
_____

Russell
*v.*
South-Britain.

The society took charge of the fund and managed it pursuant to the stipulations contained in the articles of subscription; and the several subscribers paid to the society, or gave their respective notes for, the amount of their several subscriptions. The society collected the interest accruing upon the fund from time to time, and applied it principally for the support of their minister, and added the residue to the principal of the fund.

On the 19th of *September* 1825, the society owned forty-nine shares of the stock of the *Eagle Bank* in the city of *New-Haven,* for which they had, from time to time, subscribed, and paid, in part, from the money raised by said subscription, and in part, from other money belonging to the society. At that time, the *Eagle Bank* failed and became insolvent; whereby said stock was rendered of no value.

*Johnson Wheeler,* who subscribed 200 dollars to the fund, gave his note for that sum, which, on the 1st of *June* 1829, was held by the society, and constituted a part of the fund. At that time, he died. Administration being granted on his estate, the court of probate, on the 15th of *June* 1829, passed a decree limiting the term of six months from that time, for the exhibition of claims; whereof notice was given, by posting such notice, within a few days afterwards, on the sign-post in the society of *South-Britain,* and by publishing it, three successive weeks, in a newspaper printed in *New-Haven,* the first publication being on the 4th of *July* 1829. The defendants presented their claim upon this note to the administrator for payment, within said term of six months. On the 6th of *February* 1830, the administrator gave notice to the treasurer of the society, that he should not pay it; and it remains unpaid. It was not sued, by the society, within six months after the last mentioned notice. The estate of *Wheeler* is solvent.

The plaintiff gave his note to the society, for the amount of his subscription, pursuant to the articles, which he paid in full before the failure of the *Eagle Bank;* but the defendants have never made up the deficiency occasioned in their fund, by that event, or by the loss of the claim against *Wheeler's* estate. In other respects, they have managed the fund according to the articles.

Previous to the commencement of the suit, the plaintiff made demand of the defendants, by an authorized agent, of the

amount of his subscription, or such sum as he was entitled to; but the defendants resisted his claim and have paid nothing.

The questions of law arising upon these facts were reserved for the advice of this Court, under an agreement of the parties, that the issues should be found and judgment rendered pursuant to such advice.

*R. S. Baldwin* and *R. S. Hinman*, for the plaintiff, contended, 1. That the action was sustainable on the count for money had and received. The defendants received money of the plaintiff, on certain conditions, which were not fulfilled; and therefore, the plaintiff became entitled to recover it from them, in this action. *Ex æquo et bono* the money received of the defendants belongs to the plaintiff. It is considered in law as having been received to his use.

2. The agreement on which the second and third counts were founded, was binding upon the defendants. It was in writing; and the recording of it, by the clerk, pursuant to to the authority given him by the society, and the vote accepting it, constituted a sufficient *memorandum* within the statute.

3. That upon the just construction of the agreement, if the fund was diminished, in any way or by any cause whatever, and the society failed to make good the deficiency within the time prescribed, the several subscribers were entitled to reclaim their subscriptions.

4. That if this construction be erroneous, and the defendants cannot be subjected, without some misconduct or default, on their part, still the *Wheeler* note, in this case, was lost through their negligence; the claim not having been prosecuted within six months after notice to the creditor. *Stat.* 204.

5. That the special counts, particularly the last one, were apt for the purpose of a recovery.

*N. Smith* and *T. Smith*, for the defendants, contended, 1. That according to the just construction of the whole agreement, and taking one part in connexion with, and as qualified by, another part, the defendants were accountable to the subscribers only for *the prudent management of the fund*.

2. That if otherwise, still the plaintiff can recover only his share of the fund, in its condition when the cause of action ac-

crued , *i. e.* a sum bearing the same proportion to the then ex-
isting fund, as the sum he subscribed bore to the original
fund.

3. That the defendants hold the fund as a mere *trust ;* and
the question whether any part of the fund has been lost, is
matter of *account*, which can be taken only *in equity*.

4. That no misconduct, imprudence or negligence in the
management of the fund, is imputable to the defendants. As
to the loss by the *Eagle Bank,* none is suggested in either of
the special counts ; and none appears in the facts agreed up-
on. And as to the claim against *Wheeler's* estate, it is still
collectable, as the order of limitation made by the court of
probate, is void ; but if not void, the order is inoperative, as
the administrator did not cause it to be published in due sea-
son.

5. That if there was a breach of the condition resulting
from the failure of the *Eagle Bank*, there has been a *waiver*
of that breach, by the plaintiff, as he has permitted the society
to remain in possession of the fund, for nearly six years, and
upon the faith of his acquiescence, to enter into all the en-
gagements necessary to maintain the preaching of the gospel.
*Doe* d. *Sheppard* v. *Allen,* 3 *Taun.* 78. 7 *Conn. Rep.* 45.

6. That neither of the special counts corresponds with the
agreement declared upon.

7. That the plaintiff cannot recover under the count for
money had and received ; the contract being still an open
subsisting contract. The declaration must, therefore, be spe-
cial. *Weston* v. *Downes, Doug.* 53. 1 *Chitt. Plead.* 340.
2 *Stark. Ev.* 116.

BISSELL, J. No question has been raised upon either of the
special pleas filed in this case : of course, they may be laid
out of consideration.

The principal question, which has been made and discussed,
is, whether upon a sound construction of the articles of sub-
scription, in connection with the facts admitted and found in
the case, an action of law can be sustained ?

It is admitted, that a large portion of the fund, originally
subscribed, was lost, by the failure of the *Eagle Bank ;* and
that the loss has never been made good, by the society.

It has not been found, nor has it been contended, that this

loss is to be attributed to any fault, or want of prudence, on the part of the society. On the contrary, it is admitted, that the loss happened through the unexpected failure of an institution, in the stability of which, the public, generally, reposed the highest confidence.

On these facts, it is contended, that this action will not lie. In determining this question, we are brought to consider the articles of subscription: and in putting a construction upon this instrument, we are not at liberty to enquire whether it was expedient for the society, to accept a subscription, guarded in the manner this is; or whether in accepting it, they have made a provident, or improvident contract. They have accepted it, and in so doing, have obligated themselves to comply with all its requirements. What, then, is the contract, and what are the obligations which it imposes on these defendants? In ascertaining this, we are to regard the intention of the parties, as that intention is expressed upon the face of the instrument.

It is impossible to look over this subscription, and not to perceive, that it was a leading object with the subscribers, to secure the perpetuity of the fund: and not only so, but to preserve it entire: to make it the *interest*, as well as the *duty* of the society, in case of a loss, "*in any manner whatever*," to supply the loss, and to restore the fund to its original state, within the period limited.

Accordingly, the first article provides, that the principal of the fund shall be forever kept on interest, with good and sufficient security, by the society, "*at its own charge and risk.*" The intention of the donors is here made manifest; and the obligations of the society are hardly less so.

But if there could exist a doubt, with regard to the import of the terms here used, that doubt would seem to be entirely removed, by a consideration of the fourth article. It would seem that the language of that article is so plain and explicit as to preclude all doubt, and all question of construction. It, indeed, hardly admits of construction.

But it has been contended, that the general expression, that " in case any part of the fund shall be lost, wasted or diminished, in any manner whatever," is to be taken in connection with, and qualified by, the preceding part of the sentence, which makes the society accountable to the subscribers for the prudent management of the fund; and that taking the

*New-Haven,*
*June, 1833.*

Russell
*v.*
South-Britain.

whole together, it binds the society to the use of ordinary dil-
igence only; and that the forfeiture does not attach, except
in case of a loss through negligence. This construction I do
not feel at liberty to adopt. It is, indeed, not construing, but
doing violence to the contract. Instead of giving effect to
every part of it, it is, literally, tearing away a part. True it
is, the society are made accountable to the subscribers for the
prudent management of the fund. But how accountable?—
The succeeding article shows. They were to cause the in-
strument, and vote of the society accepting the subscription,
to be recorded in the records of the society; they were, annu-
ally, to make a full and correct statement of the situation of
the whole fund; of the interest that had accrued; how much
had been collected; and how the same had been applied.
This statement was to be recorded;—was to be accessible to
every subscriber; and copies of it were to be furnished them,
when required. They had given their money to secure an
object, which they deemed important. They were members
of the society, and as such, in common with the other mem-
bers, had an interest in this fund. It was not extraordinary,
then, that they should have claimed a kind of visitatorial power
in regard to it; that they should have insisted upon the right
of seeing that it was so managed, as best to secure the objects
which they had in view.

But they meant not only to secure the prudent management
of the fund; they intended also to guard against the loss of
any part of it. They intended to make the society insurers
against a loss, *in any event;* and they have done so, by provi-
ding, that, in case any part of the fund shall be lost, wasted or
diminished, *in any manner whatever*, and not replaced within a
year, the entire sum subscribed shall be forfeited.

These two clauses, then, are not inconsistent. The one is
not dependent upon, or qualified by, the other. The one is
intended to guard against mismanagement, the other against a
loss. Effect may be given to each. But upon the construc-
tion contended for, the emphatic words " *in any manner what-
ever*," must be expunged from the contract. I see not, by
what authority, that may be done.

Besides, it should be remarked, that a loss (if not replaced)
of any part of the principal, and the misapplication of the in-
terest, are both placed on the same ground; and the one, as
well as the other, induces a forfeiture of the entire sum ori-

ginally subscribed.  Now, it can hardly be contended, that should this fund be diverted from its proper objects, and the interest applied to others, not contemplated, the donors would not have a right to demand and recover their original subscriptions.

This view of the case goes very far to dispose of the remaining objection, growing out of the contract.

It is contended, that, by the terms of the instrument, nothing more is forfeited than the fund, *in its actual condition;* which is to be distributed *pro rata,* among the subscribers ; that in order to this, an account must be taken, which can be done only in chancery ; and that, therefore, the present action cannot be sustained.  This objection is grounded upon that clause in the fourth article, which provides, that in case of a forfeiture, each and every subscriber may sue for, and recover his *share, according to the sum originally subscribed.*

It should be recollected, that in case any part of the interest shall be applied to any objects other than those specified in the articles, then not only the sum originally subscribed is to be forfeited, but also a sum, which shall be equal to the interest misapplied ; and then follows the clause on which the objection is founded.  Now, the word " *share,*" as here used, obviously applies, not only to the sum originally subscribed, but also to the sum which may be forfeited, by a misapplication of the interest.  And however the case might be, were such misapplication the breach complained of ; there clearly is, in this case, no foundation whatever for the objection.— The plaintiff claims to recover, on the ground that a part of the fund has been *lost.*  And here the contract is explicit, that the forfeiture shall be of the *sum originally subscribed.*  There is no account to be taken ; no necessity for resorting to a court of chancery.  The plaintiff's claim is merely for damages, resulting from a breach of contract ; and those damages liquidated, by the contract itself.  The remedy at law is not only adequate, but it is the appropriate remedy.

A question has been made, whether *Johnson Wheeler's* subscription has been lost, by the negligence of the society ; and that question depends upon the legal effect of an order of the court of probate for the district of *Woodbury.*  On that point it is not my purpose to express any opinion ; it being rendered unnecessary, by the view which I have taken of the ca

But it has been further insisted, that although there has been
a breach of the contract, and a consequent forfeiture of the fund, yet there has been a *waiver* of the breach, on the part of the plaintiff; and therefore, he cannot recover.

To this, it may be sufficient to answer, that there is no fact found in the case, which affords the slightest foundation for the objection. No act has been done, or acquiesced in, from which a waiver can be presumed. The plaintiff has, merely, forbore to sue, for nearly six years after his right of action had accrued ; and if this be in law a waiver, the statute of limitations would seem to be useless.

Again; it has been urged, the action, in its present form, cannot be maintained, inasmuch as the contract, which is to be deduced from the articles of subscription, and the acceptance of them by the society, is not correctly declared on, in either of the special counts.

I am satisfied, that this objection must prevail.

On the subject of variance, the rule is too well settled to admit of a doubt, or demand illustration. It is sufficient to observe, that in an action on a contract, the contract given in evidence, must agree, in substance and in terms, with that stated in the declaration ; and that the entire consideration must be clearly and correctly stated. *Curley* v. *Dean,* 4 *Conn. Rep.* 259.

It has hardly been contended, that the contract offered in evidence corresponds with that stated in the second count, in either of these particulars.

In the first place, the import of the plaintiff's subscription is entirely mistaken. It is averred to be, that he promised, thereby, to pay to the treasurer of the society, the sum of one hundred dollars, in thirty days after notice of the society's accepting said fund. The proof is, of a promise in the alternative ; that is, either to pay that sum in thirty days, or to give a note payable in three years, with the annual interest.

Again; the consideration for the defendants' undertaking is not correctly stated. It is alleged to be the delivering up of the fund and subscription paper into the hands and conroul of the society.

This may have formed a part ; but it surely does not constitute the whole consideration of the defendants' promise.— And in stating the promise itself, the pleader has hardly been

more fortunate. But it is unnecessasy to pursue the objections, as this count was virtually abandoned, in the argument.

The same objections apply to the third count. The pleader has, indeed, here set forth the contract. But this does not relieve the difficulty ; as the contract set forth, does not sustain the previous averments. *Willoughby* v. *Raymond*, 4 *Conn. Rep.* 130.

But the count is liable to this further objection. It professes to set forth, not only the articles of subscription, but the names of the subscribers. And in regard to them, it is averred, that they were all *original subscribers*. The proof is, that five of them, *viz. Truman Pearce, Bethuel Ward, Wait Downs, Obadiah Hawley* and *Burton Canfield were not original subscribers ;* but that they became subscribers after the subscription had been accepted, and under a vote of the society to enlarge the fund. The variance is fatal.

It has, however, been contended, that the action may be sustained, on the general count for money had and received. I think otherwise. There is no pretence that the contract, which is the foundation of this action, has been rescinded, by the defendants. It is an open, still-subsisting contract. And I suppose the rule to be well settled, that where there is a special contract, which is still open and in force, the action must be special ; and that no recovery can be had on the common counts. *Hull* v. *Heightman,* 2 *East* 145. *Weston* v. *Downes, Doug.* 23. *Tuttle* v. *Mayo,* 7 *Johns. Rep.* 123.

The advice to be given to the superior court, in my opinion, is, that an action at law well lies ; but that the evidence does not support either of the special counts, and that no recovery can be had on the first count.

The other Judges were of the same opinion.

Judgment for defendants.