WOLFINGTON ET AL. *v.* THE STATE.

NEW TRIAL.—*Motion.*—Motion for a new trial in a criminal action assigning as cause, that " the jury has received evidence that was illegal, admitted by court."
*Held,* that this was too indefinite.
CRIMINAL LAW.—*Larceny.—Lost Goods.*—When a finder of lost goods takes possession thereof and appropriates them to his own use, without knowing, at the time of first taking possession, who is the owner, and without having reasonable means of then knowing that fact, such taking and conversion cannot constitute larceny.

From the Orange Circuit Court.

*A. J. Simpson,* for appellants.

*C. A. Buskirk,* Attorney General, and *R. W. Miers,* Prosecuting Attorney, for the State.

DOWNEY, J.—This was an indictment for larceny against the appellants together with one Isaac Phillips.

Phillips was not found. The other defendants pleaded not guilty.

Upon trial by a jury, they were found guilty. A motion made by them for a new trial was overruled, and they were sentenced according to the verdict.

The only error properly assigned is the refusal to grant a new trial.

One cause for a new trial, which is argued by appellants, is, that certain evidence against them was improperly admitted on the trial.

This ground is stated in the motion for a new trial as follows:

" The jury has received evidence that was illegal, admitted by the court."

This cause for a new trial is entirely too indefinite to enable or to authorize us to decide anything with reference to it. *Blakely* v. *The State*, 52 Ind. 161. There are many other cases to the same effect.

The other question made under this assignment is as to the sufficiency of the evidence to justify the verdict of the jury. We have carefully read the evidence, and are of the opinion that it is not sufficient.

The indictment is in two counts. The first charges a larceny of certain treasury notes, or greenbacks, and a pocket-book, the property of one Theophilus C. Ritter; and the second charges the larceny of certain national bank notes and a pocket-book, the property of the same person.

The evidence tends to show that Ritter lost his pocket-book, containing the money, on the public highway, in May, 1873; that his name and that of his post office were written in the pocket-book in two places; that there were two promissory notes in the pocket-book, payable to Ritter; that afterwards Shaver confessed to him that he and the other defendants found the pocket-book, that Phillips snatched the pocket-book out of his hands, that they opened it and divided the contents, that this confession was eighteen months after the finding of the pocket-book, and that he, Shaver, had never since seen the pocket-book or its contents.

Shaver told Shively, another witness, that they found the pocket-book, and that he would have given it up, but the

others would not let him, and that the pocket-book had money in it, but he did not know how much.

Shaver also said to one Daugherty, another witness, that they found the pocket-book in the road, near Day's; that Phillips snatched the pocket-book from him.

Farrell, another witness for the State, testified that Wolfington said that he got two dollars and seventy-five cents in money, found in a pocket-book near Day's; and that he said he did not know whose it was.

Tindall, another witness for the State, said that he and Wolfington were in jail together in September, 1874, and Wolfington said to him that it was all spite work in the prosecution, that they had found a pocket-book, but he did not know whose it was, and that he did not see it opened.

Wolfington testified in the defence, that he, Shaver and Phillips, were going along the road in a wagon; that he was riding the saddle horse; that Shaver said, "Stop!" that he was about to lose his pocket-book; that Shaver got down, and he saw that he had a pocket-book in his hands; that Phillips snatched it from Shaver's hands and put it in his, Phillips', pocket.

After they had gone some distance, something was said about whose pocket-book it was.

Phillips said, "Maybe it is old man Winnegar's;" Shaver said it might be Dr. Ritter's; that he never had the pocket-book in his hands, never saw it opened, never saw it after Phillips snatched it from the hands of Shaver.

While they were travelling along the road, Phillips said to him: "Wolfington, would you treat, if you had the money?" "I said, 'Yes.' Then Phillips gave me two dollars and seventy-five cents. We did not know where Phillips got the two dollars and seventy-five cents;" and that they bought some bitters with the money.

Shaver testified that he and Wolfington and Phillips were going along the road in a wagon; that he saw a pocket-book in the road; that he got down and picked it up; that then and there Phillips snatched it out of his hands;

that he never saw it afterwards, never saw it opened, never saw anything that was in it, then or afterwards; that he did not know whose it was; that he could not read writing; that Ritter came to him in the field, where he was at work, in a rough and threatening manner; that Ritter told him that he had stolen the pocket-book, that he need not deny it, that he could prove it on him; that he was afraid Ritter would take his life; that he made a statement to Ritter, through fear that Ritter would take his life; that Ritter demanded of him a note for fifty dollars; that he gave him his note for fifty dollars, ten of which were for doctor's bill, and forty to compromise this prosecution; and that he did not owe Ritter fifty dollars for medical attendance. Ritter's statement, with reference to the note given to him by Shaver, was, that he had made three or four medical visits to the house of Shaver, a distance of three miles, and that the note was given for such visits.

The law with reference to the larceny of lost goods is not very well settled. It seems to be settled, 1. That the felonious intent must exist at the time when the finder takes possession of the goods; and that if such intent does not then exist, but the finder afterwards forms that intent and conceals the goods, or appropriates them to his own use, it is not larceny. The existence or non-existence of such intent, at the time of taking possession of the goods, must be found from all the facts and circumstances attending the transaction, as in any other case. 2 Bishop Crim. Law, sec. 881, *et seq.* 2. If the finder of the goods, at the time, knows the owner of the goods, and, with such knowledge, converts them to his own use, he is guilty of larceny. This knowledge of ownership may be derived either from having previously seen the goods in the possession of the owner, from marks upon them, or in any other way. 2 Bishop Crim. Law, sec. 882.

In *The Commonwealth* v. *Titus*, 116 Mass. 42, the court laid down the rule as follows:

"The finder of lost goods may lawfully take them into his

possession, and if he does so without any felonious intent at that time, a subsequent conversion of them to his own use, by whatever intent that conversion is accompanied, will not constitute larceny. But if, at the time of first taking them into his possession, he has a felonious intent to appropriate them to his own use and to deprive the owner of them, and then knows or has the reasonable means of knowing or ascertaining, by marks on the goods or otherwise, who the owner is, he may be found guilty of larceny."

In *The People* v. *Cogdell*, 1 Hill, 94, the law was laid down in substantially the same terms. See, also, *The People* v. *M'Garren*, 17 Wend. 460.

In *The State* v. *Weston*, 9 Conn. 526, the defendants found a pocket-book in the highway, containing bank bills, and converted the property to their own use. The name of the owner was legibly written in the pocket-book, and it was proved that the defendants could read. The conviction was held good.

BISHOP, *supra*, says: " Some of the cases say, if he" (the finder) " knows who the owner is, or has the means of ascertaining; but the better doctrine is as above set down, because every man by advertising and inquiring can find the owner, if he is to be found, while the guilt of a defendant must attach at the moment, if ever, without depending on an if."

If the finder does not know, and has not, at the time of taking possession of the goods, the means of then knowing the owner, the case is one of trover and conversion, and not of larceny.

It appears, in the case under consideration, that Shaver could not read, and that the pocket-book was taken out of his hands immediately after he picked it up; that he never saw it afterwards, nor anything that was in it. The evidence on behalf of the State does not show that Shaver knew who owned the pocket-book, or that he had the means, at the time, of ascertaining that fact.

The evidence against Wolfington is still less satisfactory.

In our judgment, the evidence does not prove a case against the defendants coming within the law as we have stated it.

The judgment is reversed, and the cause remanded for a new trial; and the clerk will certify to the warden of the state prison, according to law.